UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KIMBERLY D. SCOTT,

        Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

        Defendant.

CAUSE NO. 3:19-CV-870 DRL

ORDER & OPINION

Kimberly Dianne Scott appeals from the Social Security Commissioner's final judgment denying her disability insurance. Ms. Scott requests remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court grants Ms. Scott's request for remand and remands the Commissioner's decision.

BACKGROUND

Ms. Scott suffers from a variety of physical and mental health impairments. Ms. Scott has an associate's degree and has previous work experience as school librarian and as a school secretary for maintenance and transportation [R. 50-52]. Ms. Scott's mental impairments include posttraumatic stress disorder, anxiety disorder, and depressive disorder [R. 12]. Ms. Scott suffers from the physical impairments of obesity, diabetes mellitus, and degenerative disc disease [R. 12].

Ms. Scott filed a Title II application for benefits on May 18, 2016, which was denied initially on September 6, 2016, and again upon reconsideration on October 11, 2016 [R. 10, 84, 90]. Her claims were heard by an Administrative Law Judge (ALJ) on August 13, 2018 [R. 10]. In a November 15, 2018, decision, the ALJ denied Ms. Scott's petition on the basis that she could not show that she was disabled as defined by the Social Security Act [R. 7-9].

1

The ALJ came to this conclusion relying in part on the opinions of the state psychological consultants [R. 21]. The ALJ found that Ms. Scott had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c) except she could lift and/or carry 50 pounds occasionally and 25 pounds frequently. Ms. Scott could sit six hours during an eight-hour workday and stand and/or walk six hours during an eight-hour workday. She could never climb ladders, ropes, and scaffolds, but occasionally climb ramps and stairs. Ms. Scott could occasionally balance, stoop, kneel, crouch, and crawl. She couldn't be exposed to concentrated fumes, odors, dusts, or gases. She couldn't be exposed to poor ventilation. Ms. Scott could understand, remember, and follow simple to mildly complex instructions. She was restricted to work that involved brief, superficial interactions with fellow workers, supervisors, and the public. Within these parameters and in the context of performing semi-skilled tasks, Ms. Scott was able to sustain attention and concentration skills to carry out work like tasks with reasonable pace and persistence [R. 15-16]. While the ALJ found that Ms. Scott's RFC prevented her from performing her past relevant work, the ALJ found that she could perform a significant number of jobs in the national economy [R. 23]. This decision became final when the Appeals Council denied Ms. Scott's request for review [R. 1].

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built

an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, where the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Scott appears to challenge the ALJ's conclusions that she is not totally disabled. She makes multiple arguments about alleged errors in a 68-page opening brief. Ultimately, Ms. Scott asserts that: (1) the ALJ erred at step two; (2) the ALJ erred at step three; (3) the ALJ erred in weighing medical opinion evidence; (4) the ALJ erred in the physical RFC assessment; (5) the ALJ erred in the mental RFC assessment; (6) the ALJ erred in analyzing Ms. Scott's subjective symptoms; and (7) the ALJ erred in the hypotheticals to the vocational expert and at step five. The court agrees with Ms. Scott that the ALJ erred in the physical RFC assessment with regards to her shoulder impairment, and that the ALJ erred in weighing medical opinion evidence, so addresses no other.

A.   *The ALJ Erred in Failing to Account for Non-Severe Impairments in the RFC Discussion.*

An ALJ's RFC and hypothetical questions posed to the vocational expert must incorporate all of the claimant's limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). That said, an RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The RFC determination is a legal decision rather than a medical one. *See Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 LEXIS 5, at 1 (July 2, 1996). In determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. §§404.1545(a)(2); *see also Craft*, 539 F.3d at 676.

The ALJ found Ms. Scott's shoulder impairments to be non-severe at Step 2 [R. 12]. The ALJ didn't offer any limitations regarding her shoulder impairments. The ALJ noted that Ms. Scott regularly showed decreased range of motion in her right shoulder yet didn't account for that decreased range of motion in the RFC [R. 18, 20]. The ALJ doesn't otherwise discuss Ms. Scott's shoulder impairments in the RFC analysis. This error is problematic because the ALJ found that Ms. Scott could perform medium work without any reaching or handling restrictions, yet she didn't acknowledge any of the medical evidence regarding Ms. Scott's shoulder impairment. Ms. Scott argues that this error requires remand.

The Commissioner offers no argument in response other than to point out the reasons why the ALJ found Ms. Scott's shoulder impairment to be non-severe. Such a response fails to acknowledge that an ALJ must "consider the limitations imposed by all impairments, severe and non-severe." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019); 20 C.F.R. § 404.1523. The duty to analyze

4

non-severe impairments in determining the RFC is fundamental to the disability programs under the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 150-51 (1987). The Commissioner also points out that the ALJ twice mentioned decreased range of motion in Ms. Scott's right shoulder. However, both mentions are made in passing as an exception to "mostly intact objective findings" [R. 19-20]. The ALJ never discusses the impact the decreased range of motion may or may not have on Ms. Scott's RFC, nor does the decision explore the many other mentions of Ms. Scott's limitations caused by her shoulder impairment. One of Ms. Scott's doctors noted that Ms. Scott needed to avoid lifting and repeated overhead lifting [R. 524, 527]. Ms. Scott also testified about difficulty with lifting, pain in her right shoulder, and difficulty reaching directly overhead or behind her head.

"A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citing *Golembiewski v. Barnhart*, 332 F.3d 912, 918 (7th Cir. 2003)). Though the ALJ found Ms. Scott's shoulder impairment to be non-severe in isolation, she was still required to consider the aggregate effect of her impairments and any limitations still caused by her non-severe impairments. Without any discussion by the ALJ, the court cannot determine that the ALJ properly considered the effects of Ms. Scott's shoulder impairment on her RFC. Remand is required.

      B.      *The ALJ Erred in Weighing Medical Opinion Evidence.*

An ALJ must weigh all medical opinion evidence using a "checklist of factors" found in 20 C.F.R. § 404.1527(c). *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). Those factors include: (1) the examining relationship; (2) the treatment relationship (including the length of treatment and frequency of examination and the nature and extent of the treatment relationship), (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating physician's specialization; and (6) other factors which either support or contradict the medical opinion. 20 C.F.R. § 404.1527(c). The ALJ must discuss each medical opinion and the weight given to each opinion if the court is to provide meaningful review. *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (citations

omitted). "If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required." *Id.* Ms. Scott argues that the ALJ failed to consider multiple factors in considering the opinions of three of her treating specialists.

Ms. Scott argues that the ALJ improperly analyzed the opinion of her treating therapists and physician. Ms. Scott saw her therapist, Eric Foster, M.A, weekly. Mr. Foster provided a mental residual functional capacity assessment in May 2016. He opined that Ms. Scott would have moderate limitations in the ability to remember locations and work-like procedures, marked limitations in the ability understand and remember detailed instruction, marked limitations in the ability maintain attention and concentration for extended periods, marked limitations in her ability to work in coordination with or proximity to others without being distracted by them, marked limitations in the ability to make simple work-related decisions, marked limitations in the ability to interact appropriately with the general public and supervisors, and marked limitations in her ability to tolerate normal levels of stress [R. 361-63]. Mr. Foster opined that Ms. Scott could not currently work due to her depression symptoms [R. 363].

The ALJ gave this opinion little weight, finding that Mr. Foster is not an acceptable medical source and that his opinions are inconsistent with the medical record [R. 20]. The ALJ found that Mr. Foster's opinion is inconsistent with the medical evidence "showing mostly intact psychological objective findings." *Id.* Finally, the ALJ found that Mr. Foster "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant," and the ALJ questioned the reliability of Ms. Scott's subjective complaints.

While the ALJ is correct in finding Mr. Foster is not an "acceptable medical source" under the Commissioner's regulations, the ALJ still must consider opinions from non-acceptable medical sources. SSR 06-03p, 2006 SSR LEXIS 5 (2006). The regulations recognize that, as our health care system changes and evolves, more and more sources that are not considered "acceptable medical

6

sources" are providing medical treatment and evaluation that would have been provided by an "acceptable medical source" in the past. *Id.* at 3. When considering such opinions, the ALJ should consider the same factors he would consider when determining what weight to give a medical opinion from an "acceptable medical source." *Id.* at 5-7; *see Dogan v. Astrue*, 751 F. Supp.2d 1029, 1039 (N.D. Ind. 2010) (Lee, J.). The ALJ didn't properly articulate her reasons for discounting Mr. Foster's opinion using these factors.

The ALJ erred in failing to discuss the supportability of Mr. Foster's opinion with the opinions of Dr. Tod Stillman, Ms. Scott's treating physician, and her other treating therapist, Ms. Jacqueline Harris. While the ALJ gave both of the opinions either little or no weight, they are consistent with Dr. Foster's opinion, which should be noted in discussing the medical opinions. The ALJ failed to give more than little weight to any of Ms. Scott's treating physicians or therapists, giving great weight only to the state agency psychological consultants. While the ALJ is entitled to do this, she must consider all of the factors in doing so. Multiple treating sources opined that Ms. Scott's mental impairments were far more limiting than the ALJ's RFC supports. The ALJ didn't discuss the supportability of the treating source opinions.

Moreover, the ALJ continually points to "mostly intact psychological objective findings," such as normal mood and affect, yet in the same sentence notes that Ms. Scott regularly showed depressed mood and affect [R. 20-21]. The ALJ fails to explain the inconsistencies in these statements and fails to build to requisite logical bridge between the evidence and her conclusion. Ms. Scott cannot show "normal memory, judgment, mood, and affect with the exceptions of tearfulness, anxiousness, and depressed mood and affect" [R. 20, 21]. The ALJ uses this same verbiage in discussing the opinions of Mr. Foster, Ms. Harris, Dr. Stillman, and the state agency psychological consultants [R. 20-21]. This language is conflicting and requires remand because a logical bridge has not been developed. *See Craft*, 539 F.3d at 673.

7

Furthermore, the ALJ dismissed the opinions of both treating therapists and treating physician Dr. Stillman for "apparently [relying] quite heavily on the subjective report of symptoms and limitations provided by the claimant, and [seeming] to uncritically accept as true most, if not all, of what the claimant reported" [R. 20]. This phrase was used three separate times in discounting each opinion. This type of reasoning overlooks that in the context of mental health, subjective complaints are a legitimate basis for a medical opinion. *See Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). The ALJ's decision to dismiss the opinion of three treating medical professionals because they relied on Ms. Scott's statements was error.

Ms. Scott makes several other arguments regarding the ALJ's treatment of her subjective symptoms, alleged errors at steps two and three, as well as further errors in weighing medical opinion evidence and in formulating the RFC. However, because the ALJ erred in weighing medical opinions and in failing to account for Ms. Scott's shoulder impairments, the court needn't address these other arguments. Proper analysis of the medical opinions and the RFC may alter the rest of the decision. On remand, the ALJ should properly analyze and discuss Ms. Scott's shoulder impairments and the three treating opinions in the record.

## CONCLUSION

The court finds that the ALJ erred in failing to consider Ms. Scott's non-severe shoulder impairment in the RFC determination and erred in weighing the mental impairment medical opinion evidence. The court accordingly GRANTS Ms. Scott's request for remand and REMANDS the Commissioner's decision.

SO ORDERED.

June 18, 2020                                                                 *s/ Damon R. Leichty*
                                                                             Judge, United States District Court